Carroll
No. 83-409

## Everett Albee

v.

## Wolfeboro Railroad Co., Inc. *& a.*

March 1, 1985

*Frederick L. Cox*, of Wolfeboro, by brief and orally, for the plaintiff.

*Walker & Varney*, of Wolfeboro (*Robert C. Varney* on the brief and orally), for the defendants.

BATCHELDER, J.   In this appeal, the defendants, Wolfeboro Railroad Co., Inc. and Wolfeboro Railroad Associates, challenge the judgment of $28,764.74 entered by the Superior Court (*Wyman*, J.) in favor of the plaintiff, Everett Albee. We affirm in part and reverse in part.

The defendants own and operate an excursion railroad between Wolfeboro and Wakefield. From January through December 1980, the plaintiff rendered to the defendants materials and services for which he periodically submitted invoices, including invoices for July, August, and September for interest, at varying rates, on the outstanding debt. In September, 1980, the parties disagreed over the amount owed the plaintiff.

On September 16, the parties met and signed a letter agreement which provided:

> "The Wolfeboro Railroad Associates acknowledge debt to Everett S. Albee for approximately $25,000.00 to be paid as follows:
>
> A.) $10,000.00 will be paid by October 1, 1980.

> B.) Exact balance due will be calculated on October 1, 1980.
>
> C.) Everett S. Albee will accept a note on October 1, 1980 for the balance due plus 2% interest per month to be paid in full on or before February 1, 1981."

The defendants never tendered the $10,000 payment specified in the agreement, and the parties failed to agree on the balance due. On January 28, 1981, the plaintiff filed suit.

Trial was held before a Master (*Charles T. Gallagher*, Esq.) on August 25, 1983. The plaintiff introduced as evidence the invoices for his services and materials and provided a typewritten summary thereof. The defendants also provided a summary of what they considered to be the legitimate charges of the plaintiff. Neither of these summaries was introduced in evidence.

The master found that the invoices established legitimate claims for $98,216.98 and that these were partially offset by payments, credits, and repair costs totaling $69,452.24. The master accordingly found the judgment amount to be $28,764.74, the difference between these figures. He also found that interest on the debt was to be calculated from October 1, 1980, until final judgment at the 2% monthly rate specified in the letter agreement. His recommendation was approved by the court on September 9, 1983. On October 18, 1983, the defendants paid $28,764.74 into the superior court pursuant to Superior Court Rule 61 to be held by the court pending disposition of this appeal.

The defendants challenge the judgment on the grounds that: (1) it is based in part on duplicative invoices and, to that extent, is supported by insufficient evidence; (2) it is based in part on invoices for legally unenforceable labor surcharges; (3) it includes the interest charges specified in the July, August, and September invoices which are unenforceable under RSA 336:1 (1966); (4) it is based in part on an incorrect construction of the September 16, 1981 letter agreement; and (5) the master improperly excluded evidence that would have supported a lesser judgment. We consider these claims in turn.

The defendants first contend that the invoices submitted as evidence are patently duplicative and hence that the judgment must be reduced by the amount of these duplications. A number of invoices indeed recite charges for apparently identical services and materials for the same dates, unavoidably raising the inference that these invoices are duplicative.

■■ The reliability of these invoices is an issue of credibility, which was a matter for the trial court. "Credibility as well as weight given to testimony is a question of fact for the court and if the findings could reasonably be made on all the evidence they must stand." *Gordon v. Gordon*, 117 N.H. 862, 865–66, 379 A.2d 810, 813 (1977). At trial, the defendants impeached the credibility of these invoices through the testimony of Dwight Hilson, president of Wolfeboro Railroad Co., Inc. The plaintiff failed to present any evidence regarding the charges specified in these invoices that tended to show that each charge represented a distinct performance of services by the plaintiff. In light of Mr. Hilson's testimony, the apparently duplicative nature of these invoices, and the absence of rehabilitative evidence, we find that the master erred in treating these invoices as credible evidence. On remand, further evidence should be heard so that a determination can be made on whether these invoices are in fact duplicative.

The defendants next contend that the invoices contain labor surcharges that are legally unenforceable and that the judgment must be reduced to the extent of these surcharges. In performing his contract with the defendants, the plaintiff occasionally hired independent contractors. The charges of these contractors were passed along to the defendants along with surcharges that ranged as high as 60% of the independent contractor's charge. The defendants contend that these surcharges were, as a matter of law, unenforceable as unduly excessive and that the judgment must be reduced accordingly.

■■ Every contract contains an implied covenant of good faith and fair dealing. *Seaward Constr. Co. v. City of Rochester*, 118 N.H. 128, 129, 383 A.2d 707, 708 (1978). In interpreting the contract between the parties, the master found that the surcharges were reasonable and thus legally enforceable. The defendants fail to present us with any authority indicating that the master's interpretation is incorrect; nor are we aware of any such authority. We uphold the master's finding that the surcharges were reasonable and thus find them permissible under the parties' implied covenant of good faith and fair dealing.

The defendants' third challenge concerns the July, August, and September invoices for interest. These invoices provide for interest rates in excess of the rate specified by RSA 336:1 (1966), the interest rate statute effective at that time. The defendants never expressly assented to these charges in writing. They contend that, absent an express written consent on their part to the charges, the invoices are legally unenforceable under RSA 336:1 (1966). We agree.

RSA 336:1 (1966) provides:

"... in all business transactions where interest is paid or secured, it shall be computed and paid at the rate of six dollars on a hundred dollars for one year, *unless a different rate is expressly stipulated in writing.*"

(Emphasis added.)

The statute was amended in 1981 to require that interest be paid at the statutory rate, "unless otherwise *agreed* upon in writing." RSA 336:1 (emphasis added). An excessive interest charge is "agreed upon in writing" only if the debtor consents in writing to the charge. *See D. W. Clark Road Equip., Inc. v. Murray Walter, Inc.,* 124 N.H. 281, 285, 469 A.2d 1326, 1329 (1983). "[W]here a former statute is clarified by amendment, the amendment is strong evidence of the legislative intent concerning the original enactment." *Blue Mountain Forest Ass'n v. Town of Croydon,* 119 N.H. 202, 205, 400 A.2d 55, 57 (1979). Accordingly, we construe RSA 336:1 (1966) to require a debtor's written consent to an excessive interest charge for the charge to be enforceable against him. On remand, the superior court should reduce the judgment by the amount of interest specified in the invoices that exceeds the 6% rate specified in the statute.

Fourth, the defendants challenge the court's construction of the September 16th letter agreement in two respects. First, they contend that the court improperly interpreted the agreement as a binding contract and that the correct construction is that this was merely an agreement to agree in the future and thus fails to be enforceable due to the indefiniteness of the parties' obligations. *See* WILLISTON ON CONTRACTS § 45, 149–50 (3d ed. 1957).

This construction is untenable. The agreement exacts specific obligations from both parties. Wolfeboro Railroad Associates (Wolfeboro) was obligated to tender to the plaintiff on October 1, 1980, $10,000 along with a note for the balance of the debt. In exchange for Wolfeboro's acceptance of these terms, the plaintiff temporarily gave up his right to prosecute his claims for compensation. The only indefinite term of the agreement was the exact amount owed the plaintiff, which was stated as "approximately $25,000." Both parties had an implied obligation to exercise good faith in calculating this amount. *See Seaward Constr. Co. v. City of Rochester,* 118 N.H. 128, 129, 383 A.2d 707, 708 (1978). In light of this obligation, we uphold the master's determination that this contract is sufficiently definite to be enforceable.

Second, the defendants contend that the court improperly construed the letter agreement to require 2% interest per month

until final judgment. The applicable provision of the agreement provides: "Everett S. Albee will accept a note on October 1, 1980 for the balance due plus 2% per month to be paid in full on or before February 1, 1981." The defendants argue that the correct construction of this provision is that the 2% interest was a term of the note and that this interest therefore could not run beyond February 1, 1981, the note's maturity date. We agree.

■ The master construed the September 16th agreement as imposing on Wolfeboro an obligation to pay interest severable from its obligation to tender and honor a note for the balance due. The agreement does not support this construction. The plain meaning of the agreement is that Wolfeboro was obligated to tender and the plaintiff to accept a note for the balance due with monthly interest thereon of 2%, payable "on or before February 1, 1981." On February 1, 1981, Wolfeboro's interest obligation on the note expired. Interest thereafter must be calculated at the statutory rate.

Under the agreement, 2% interest therefore is to be calculated on the principal of the note for the note's duration. The principal consisted of "the balance due." Because Wolfeboro failed to make the $10,000 payment specified in the agreement, the balance due included all unpaid legitimate claims of the plaintiff, including this $10,000 obligation.

■ Interest for the period after February 1, 1981, is to be calculated at the appropriate statutory rates. As "the rate in effect at the time the agreement for the business transaction [was] made," RSA 336:2, II, the rate of 6% prescribed by RSA 336:1 (1966) is the appropriate rate for interest on the debt prior to the filing of suit. As "the rate in effect at the time the verdict [was] rendered," the rate of 10% prescribed by RSA 336:1 is the appropriate rate for interest on the judgment, to be calculated from the time of institution of the suit, RSA 524:1-a.

Finally, the defendants claim that the master committed reversible error in refusing to admit certain testimony offered by Dwight Hilson, president of Wolfeboro Railroad Co., Inc. The master sustained five objections to the testimony of Mr. Hilson. The defendants excepted to only one of these rulings and therefore have waived appellate review of the other four. *See Rodrigue v. LaFlamme,* 122 N.H. 966, 969, 453 A.2d 1254, 1256 (1982).

The ruling preserved for appeal sustained an objection to the following question of Mr. Hilson: "Did Mr. Albee honor his obligations under that agreement?" In ruling the question improper, the court stated: "That is [a matter] for the court to determine." We uphold the ruling.

The question sought to elicit Mr. Hilson's opinion of whether the plaintiff had breached the contract. Opinion evidence is admissible if it will assist the trier of fact. *Dunlop v. Daigle,* 122 N.H. 295, 300, 444 A.2d 519, 522 (1982). "The trial court has a 'large measure of discretion' [in determining] whether opinion testimony should be admitted." *Id.* (quoting M. LOUGHLIN, NEW HAMPSHIRE TRIAL PRACTICE 100–01 (1975)). We hold that the master could properly find that the offered testimony would not be helpful in his interpretation of the facts.

*Affirmed in part;
reversed in part.*

All concurred.