### In re BRADFORD REALTY, INC., Debtor.

### BRADFORD REALTY, INC., Plaintiff,

### v.

### COSTELLO, LOMASNEY, & DeNAPOLI, INC., Defendants.

### Bankruptcy No. 84–341.

### United States Bankruptcy Court, D. New Hampshire.

### Nov. 21, 1985.

Terrie Harman, Portsmouth, N.H., for debtor.

Vincent Wenners, Manchester, N.H., for Costello, Lomasney, & DeNapoli, Inc.

John Laboe, Concord, N.H., for Holden Engineering.

Thomas Thomas, Manchester, N.H., for Joseph, Georgette, Henry, Gertrude, Lavailliere, Denise, Michelle, Mark Wescott and Robert Greenwood.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This matter was tried before the court on the debtor's objection to an unsecured claim in the amount $117,170.85 filed in this case by the defendant, Costello, Lomasney, & DeNapoli, Inc. There is no question that the debtor was indebted to the defendant for consulting engineering services on its real estate project which totaled $96,032.85 in unpaid and overdue billings.

The dispute arises as to the legal effect of an oral agreement entered into by the parties in June of 1983 by which Costello agreed to forbear proceeding with litigation to collect its debt and the debtor agreed to the payment of interest on overdue balances at a rate of 1% over the prime banking rate during the applicable periods of non-payment.

■ The first issue raised by the debtor is the contention that there was no legally sufficient consideration to support its oral promise to pay interest on this debt. This argument is specious in that it is bottomed upon the proposition that the consideration was inadequate because there was no agreement *on the part of the debtor* to delay payment to a date certain nor any agreement for interim payments of interest until the project development in question was sold. The facts amply establish that the debtor had no possibility of paying the debt off immediately and the clear understanding was that the interest would run until full payment could be effectuated by a sale of the property by the debtor.

The second issue raised by the debtor has more substance. The debtor argues that even if enforceable the oral contract for the payment of interest must be limited to 10% per annum pursuant to New Hampshire RSA 336:1. This statute provides:

"Rate of interest—the annual rate of interest on judgments and in all business transactions in which interest is paid or secured, unless otherwise agreed upon in writing, shall equal 10 percent."

The defendant seeks to take this case out of the statute by contending that it sent spread sheets showing the calculation of the interest under the oral agreement to

the debtor on December 13, 1983 and January 3, 1984, using the interest rate of 1% above prime for the particular overdue periods, to which the debtor raised no objection prior to the filing of its Chapter 11 proceeding in August of 1984. Factually, the debtor disputes that these spread sheets were received as per the dates of the transmittal letters and states that both spread sheets were only received in July of 1984 shortly before the filing. For present purposes it is unnecessary to resolve this factual dispute because the court will assume that the spread sheets were in fact mailed and delivered in December of 1983 and January of 1984. The court will also assume, as the defendant contends, that the debtor in fact orally requested the second spread sheet—in order to have the data projected to a later date in calculating the balance due on the development project.

The fact remains that there is no evidence of any *writing* which was *signed* by the debtor or its agents *consenting* to an interest rate in excess of 10 percent with regard to this transaction. The statute in question has been construed by the New Hampshire Supreme Court strictly as requiring a writing signed by the debtor evidencing "agreement" to a higher interest rate. See *D.W. Clark Road Equipment, Inc. v. Murray Walter, Inc.*, 124 N.H. 282, 469 A.2d 1326 (1983); *Albee v. Wolfeboro R. Co., Inc.*, 126 N.H. 176, 489 A.2d 148 (1985). Mere submission of invoices or statements claiming a high rate of interest, without any objection raised by the debtor, will not suffice to take the case out of the statute. Obviously the legislature in New Hampshire deemed it important for public policy reasons to require that interest rates above 10 percent in such transactions be consented to in writing by the debtor before they would be enforceable. The *Albee* opinion points out that recent amendments to the statute in New Hampshire made this legislative intent even more clear.

In the present case there simply is no writing of any sort signed by the debtor evidencing any agreement to interest rates in excess of 10 percent. If any "piece of paper" had been signed by the debtor indirectly indicating consent to such interest rates, i.e., by reference to other documents or writings that could be incorporated by reference to the incomplete writing signed by the debtor, such fact arguably could take the case out of the statute. Here however the defendant is not able to even "get off the ground" on this tack. There simply is no writing evidencing consent to which the spread sheets and transmittal letters can be tied in this sense.

In its ultimate facts this case is essentially identical to the deciding facts in the New Hampshire cases cited and the decision must be the same. A separate judgment shall be entered allowing the claim in the amount of $96,032.85, together with interest at 10 percent up to the date of bankruptcy filing on August 28, 1984 for the applicable periods. The debtor shall circulate and then submit a form of judgment setting forth the total amount of the allowed claim, in accordance with this ruling of the court, within ten days. If defendant contests the total dollar amount to be set forth in the judgment a further hearing may be scheduled for that purpose only.